**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| GREGORY J. PARISH, | ) |
|         Plaintiff, | ) |
| v. | ) No. 06 C 1690 |
| MOTOROLA, INC., | ) Judge Rebecca R. Pallmeyer |
|         Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Gregory Parish, worked as a design engineer for Defendant Motorola, Inc., until he resigned voluntarily on August 27, 2003. More than two years later, Parish filed this lawsuit, alleging that comments made by his supervisor in performance evaluations and in a "performance improvement plan" ("PIP") constitute "defamation and libel outside normal supervisory and employee interaction." Amended Complaint, ¶ 4. In discovery, Plaintiff identified, as an additional instance of defamation, Motorola's statement to the Illinois Department of Employment Security in response to his claim for unemployment benefits. Plaintiff's amended complaint adds a claim for fraudulent misrepresentation. Motorola now moves for summary judgment on all of Plaintiff's claims and, for the reasons explained here, the motion is granted.

## FACTS[1]

Motorola hired Parish on July 23, 2001 to work as a design engineer in its Automotive and Industrial Electric Group. (Def.'s 56.1 ¶ 8.) In that position, Parish was supervised by Senior Design Engineer Joel Kaphengst and by Kaphengst's own manager, Pavel Pesek. (Def.'s 56.1 ¶ 9, citing Deposition of Joel L. Kaphengst, Ex. G to Def.'s 56.1, at 11-11; Deposition of Pavel Pesek,

---

[1] Facts presented here are taken from the parties' Local Rule 56.1 statements and attachments. Defendant's Local Rule 56.1 Statement of Material Facts in Support of Defendant's Motion for Summary Judgment is cited here as "Def.'s 56.1." Plaintiff's Response to Defendant's Statement of Material Facts and Statement of Additional Material Facts is cited here as "Pltf.'s 56.1 Resp." and "Pltf.'s 56.1 Add'l." Defendant's Response to Plaintiff's Statement of Additional Material Facts is cited here as "Def.'s 56.1 Resp."

Ex. H to Def.'s 56.1 at 10-12.)

All but one of the statements that Plaintiff identifies as defamatory were made as part of Motorola's performance review process. That process included periodic meetings in which the employee and his managers assessed the employee's progress toward certain goals and, in January of each year, self-assessment by the employee and a rating by the manager of the employee's overall performance for the previous year, ranging from CE (for "consistently exceeds expectations"), EC ("exceeds some expectations"), and ME ("meets expectations") through NI ("needs improvement") and DM ("does not meet expectations"). (Def.'s 56.1 ¶ 14; Declaration of Gail Berrier, Ex. F to Def.'s 56.1, ¶ 6.) In addition to these ratings, Motorola's managers are expected to rank their employees on a curve in which no more than 20% of their subordinates are deemed "most effective" ("ME"), 70% are "solidly effective" ("SE) and ten percent are considered "least effective" ("LE"). (Def.'s 56.1 ¶ 13; Berrier Decl. ¶ 6.)

Joel Kaphengst followed these steps in evaluating Plaintiff's performance in 2002. Kaphengst rated Plaintiff as "NI" and ranked him in the "least effective" group of employees. Though he did not formally appeal this evaluation through Motorola's formal appeal process, Plaintiff did complain about it to Kaphengst and Pesek, as well as to Motorola's Human Resources department, without success. (May 23 Deposition of Gregory Parish, Exhibit E to Def.'s 56.1, at 241-47.) As a result of this poor performance evaluation, Pavel Pasek placed Plaintiff in a Performance Improvement Plan ("PIP"). (Pesek Dep. at 31-34.) Plaintiff received the final written version of that plan, which identified a need for improvement in Plaintiff's performance and behavior, on April 25, 2003. (May 23 Parish Dep. at 81; Performance Improvement Plan, Ex. E-5 to Def.'s 56.1.) To Plaintiff's knowledge, Parish, Kaphengst, Human Resources Officer Gail Berrier, and Plaintiff himself are the only persons who saw this document. (May 23 Parish Dep. at 82.) Plaintiff met with Pesek regularly while the PIP was in place; at the 30-day mark, he noticed improvement and rated Plaintiff's performance as acceptable. (May 23 Parish Dep. at 84, 274; 30-

Day Follow Up Document, Ex. E-6 to Def.'s 56.1.)

On August 27, 2003, before the conclusion of the PIP, Parish voluntarily resigned from Motorola, effective immediately. (Def.'s 56.1 Stmt ¶ 10; May 23 Parish Dep. at 96, 97; Parish Dep. Ex. 11.) Parish did not disclose the reason for his resignation at the time, (Pesek Decl. ¶ 17), but he later testified that he decided to leave Motorola because he had "enough of everything that [he] was able to do where [he] was at the company, and [he] just realized that [he was] fine with not working [there] anymore, and [he was] just going to notify them." (Def.'s 56.1 Stmt ¶ 10; May 23 Parish Dep. 119.) Parish later moved to Minnesota, where he filed this lawsuit in August 2005. (Def.'s 56.1 Stmt ¶ 11; May 23 Parish Dep. at 7, 96, 97.)[2]

In this lawsuit, Parish claims that specific statements in the April 2003 PIP document are defamatory and constitute fraudulent misrepresentations: (1) that he "received LE/SI rating last year because of insufficient productivity;" (2) that he "has demonstrated some improvement in productivity while working on the ten [cylinder] program but needs to improve further;" (3) that his "reaction to supervisor's feedback was confrontational" and that he "doesn't appear to accept negative feedback, and he disputes the need for improvement;" (4) that he "needs to improve his communication with teammates;" and (5) that he "needs to actively seek help and feedback from his teammates, accept it, and utilize it in his work." (May 23 Parish Dep. 125-27, 170-71, 185-86, 193-94, 213-14; June 23 Deposition of Gregory Parish, Ex. J to Def.'s 56.1, at 17-19, 86, 104-05, 119, 131.) He also complains that on one occasion, a co-worker, Scott Moseler, made a statement that Parish did not follow through on Moseler's suggestions; and that on another occasion Pesek asked Parish a "mocking" question during a group meeting. (June 23 Parish Dep., at 30, 181-82.) In addition, Plaintiff complains that Motorola's agent told the Department of Employment Security

---

[2] The case was removed from Minnesota state court and then transferred, on Defendant's motion, to this court.

that Parish voluntarily resigned for medical reasons. (May 23 Parish Dep. at 218-19; June 23 Parish Dep. at 165-66.)

## DISCUSSION

Defendant seeks summary judgment on all of Plaintiff's claims. Although Defendant has presented a variety of arguments in support of this motion, the court focuses only on those that are dispositive here: the untimeliness of claims arising from statements made during Plaintiff's employment; Plaintiff' failure to show any harm resulting from the alleged statement about the reason for his resignation; and the absence of any showing that Plaintiff himself was misled by Defendant's alleged false statements. Before reaching those arguments, however, the court pauses to address the choice of law.

### A. Choice of Law

In a diversity action such as this, the court will apply the choice-of-law analysis of the transferor court. *See Ferens v. John Deere Co.*, 494 U.S. 516, 519 (1990). As this case was initially filed in Minnesota, that state's choice-of-law analysis will determine whether Illinois or Minnesota tort law governs Parish's claims. For procedural matters, Minnesota applies Minnesota law; with respect to substantive issues, Minnesota conducts a choice-of-law analysis. *See Fredin v. Sharp*, 176 F.R.D. 304, 307-08 (D. Minn. 1997). Under Minnesota law, statutes of limitation are considered to be procedural. *Id.* at 308. Therefore, Minnesota's statutes of limitation regarding defamation and fraudulent misrepresentation claims apply in this action. On the other hand, the court agrees with Defendants that Minnesota's choice-of-law factors weigh in favor of applying Illinois' substantive law to Parish's tort claims. Specifically, all of the events giving rise to Parish's claim took place in Illinois. The only connection this case has to Minnesota is that Parish moved to Minnesota after the events took place.

### B.     Job Performance Evaluation Statement

Motorola argues that any statements made during Plaintiff's employment can not be the basis of a timely defamation claim. The court agrees. Minnesota law requires plaintiffs alleging defamation to file suit within two years of their "discovery of the allegedly defamatory publication." *Whyte v. American Bd. of Physical Med. & Rehab.*, 393 F. Supp. 2d 880, 890 (D. Minn. 2005); Minn. Stat. § 541.07. *See also McGovern v. Cargill, Inc.*, 463 N.W. 2d 556, 558 (Minn. App. Ct. 1990). Parish filed his complaint on August 29, 2005. It is undisputed, however, that he learned of all of the statements made by managers or co-workers during his employment with Motorola before his resignation on August 27, 2003. The fact that Plaintiff continued working for two more days, until August 29, does not change the time the statements themselves were made. (Def.'s 56.1 Stmt. ¶¶ 47, 57, 58, 67, 73.) Because any claims arising from these statements arose no later than August 27, 2003, those claims are barred by the statute of limitations.

Because these claims are time-barred, the court need not address the defenses Motorola has raised, but notes that these appear to have traction, as well. Under Illinois law, defamation consists of a false statement concerning plaintiff, an unprivileged communication of that statement to a third party, and resulting injury. *Wynne v. Loyola Univ. of Chicago*, 318 Ill. App. 3d 442, 451, 741 N.E.2d 669, 675 (1st Dist. 2000). Ordinarily, the actionable false statements must be objectively verifiable factual assertions. *Lifton v. Bd. of Educ. of the City of Chicago*, 416 F.3d 571, 579 (7th Cir. 2005). The statements at issue here–for example, that Plaintiff "needs to improve further," "disputes the need for improvement," "needs to actively seek help and feedback"–are largely statements of opinion, not a fact. *Compare Hach v. Laidlaw Transit, Inc.*, No. 02 C 996, 2002 WL 31496240 at *4 (N.D. Ill. Nov. 7, 2002) (statement that plaintiff's attitude is "'that of a victim and not a winner'" is not actionable); *Hopewell v. Vitullo,* 299 Ill. App. 3d 513, 519-20, 701 N.E.2d 99, 104 (1st Dist. 1998) (statement that a plaintiff was "'fired because of incompetence,'" not actionable because "one person's idea of when one reaches the threshold of incompetence will

vary from the next person's."); *Issacson v. Keck, Mahin & Cate*, No. 92 C 3105, 1993 WL 68079, at \*6-7 (N.D. Ill March 10, 1993) (statements by employer in plaintiff's performance evaluation were opinion because they were "in the nature of a subjective appraisal of plaintiff's performance"; specifically, statements that plaintiff was "unable to develop a *practical* solution to the problem" and "could not make a decision about what was important and was not important" could not be verified); *Skolnick v. Correctional Med. Servs., Inc.*, 132 F. Supp. 2d 1116-1129, 1128-29 (N.D. Ill. 2001) (statements made as a "general response to public criticism" are statements of opinion).

In addition, as Motorola notes, statements by an employee concerning an employee's job performance are ordinarily protected by a qualified privilege. *See, e.g., Quinn v. Jewel Food Stores, Inc,* 276 Ill. App.3d 861, 871, 658 N.E.2d 1225, 1234 (1st Dist. 1995). Most significantly, although Motorola has not emphasized the issue, the court notes that Plaintiff has no evidence that Motorola's communications harmed him. Under Illinois law, statements can be "published," for defamation purposes, when they are set forth in an interoffice document, presumably including a performance evaluation. *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 699 n.6 (7th Cir. 2006), citing *Popko v. Continental Cas. Co.,* 355 Ill. App. 3d 257, 262, 823 N.E.2d 184, 188 (1st Dist. 2005)*, Gibson v. Phillip Morris, Inc.,* 292 Ill. App. 3d 267, 685 N.E.2d 638, 645 (5th Dist. 1997). Still, unless he suffered harm as a result of that publication, Plaintiff has no claim for defamation. The best Plaintiff can do here is to point out that a recruiter from whom he sought help finding a job in 2005 told him the then two-year gap in his employment history disqualified Plaintiff for the recruiter's services. (E-mail message from Paul Montoya, Ex. 1 to Declaration of Gregory Parish.) The fact that a potential employee might be put off by a job history gap says nothing about the employer's knowledge of Plaintiff's difficulties in a two-year old job, however. The circumstances were quite different in the case on which Plaintiff relies*, Keenan v. Computer Assocs. Int'l, Inc.,* 13 F.3d 1266 (8th Cir. 1994). The defendant there first lured plaintiff to leave his previous job by telling him he did not need data processing experience, but then fired him five weeks later for "poor performance,"

in part because he did not have such experience. 13 F.3d at 1268, 1274-75. Forced to disclose to potential employers that he was terminated for poor performance, plaintiff remained unemployed for several months and ultimately took a position at a lower rate of pay than he had been earning before accepting defendant's offer. *Id.* at 1268. Plaintiff Parish was not discharged–he resigned voluntarily–and there is no evidence that Motorola communicated any criticisms of Plaintiff's job performance, either directly or through Parish's own self-disclosure, to any other potential employers.

### C. Statement to Illinois Department of Employment Security

Plaintiff asserts that some representatives of Motorola made a false statement to a investigator at the Illinois Department of Employment Security and that he did not learn of that false statement until April 2005, when someone from IDES named Debbie told him about it. (May 23 Parish Dep. at 218-220; June 23 Parish Dep. at 166-67, 171-72.) The document he cites in support of this claim is a written statement prepared by TALX UCM Services, Inc., a third party that handles Motorola's unemployment compensation claims. (3/24/05 Letter of Cevelyn Jenkins of TALK/UCX, Appendix H to Plaintiff's Response.) Motorola argues that Plaintiff has not laid an adequate foundation for admission of this document in evidence, but the court will assume for purposes of this decision that TALX UCM was acting as Motorola's agent in communicating with IDES. The statement is therefore admissible as the statement of a party opponent pursuant to FED. R. EVID. 801(d)(2)(c). *Cf. Schuster v. Shepard Chevrolet, Inc.*, No. 99 C 8326, 2002 WL 507131, *1 (N.D. Ill. Apr. 3, 2002) (declining to consider report prepared by third party unemployment claims administrator).

Even assuming the statement was made, however, it does not support a claim of defamation for a number of reasons. Plaintiff testified that he does not know who at Motorola made the alleged statement and has no reason to believe the speaker knew it was false when made. (June 23 Parish

7

Dep. at 167.)  There is no evidence the statement harmed Plaintiff; when Debbie told him about it, he flatly denied its truth:  "I explained it was totally false."  (May 23 Parish Dep. at 220.)  And although his unemployment claim was denied, it was not for health reasons.  As the notice of denial, dated April 6, 2005, reflects, the claim was denied as untimely.

Most importantly, however, Illinois law defeats any defamation claim arising from Motorola's alleged communication with IDES.  Specifically, Illinois law specifically states that "communications of any kind, either oral or written, from an employer or his workers to . . . the Director [of the Illinois Department of Employment Security] or any of his agents, representatives, or employees, made in connection with the administration of [the Unemployment Insurance Act] shall be absolutely privileged and shall not be the basis of any slander or libel suit in any court of this State unless they are false in fact and malicious in intent."  820 ILCS 405/1900.1.  Indeed, an Illinois court also held that, under this statute, an employer's statement regarding the reason for a former employee's termination, when made in the context of the employee's unemployment claim, was, unless false and malicious, privileged and not actionable.  *See Lavat v. Fruin Colnon Corp.*, 232 Ill. App. 3d 1013, 1024, 597 N.E.2d 888, 895 (1st Dist. 1992).  The court agrees with Defendant that the statement to the IDES is the type of communication referenced by the statute, and that Plaintiff has no evidence that it was made with malice.

Motorola is entitled to summary judgment on Plaintiff's claim arising from its alleged statement to IDES.

### D. Fraudulent Misrepresentation

Finally, Plaintiff has argued that Motorola's false statements concerning his job performance constitute fraudulent misrepresentations.  This argument reflects a simple misunderstanding of the nature of the claim, which requires a showing that the plaintiff himself was misled by defendant's words or conduct.  The claim of fraudulent misrepresentation under Illinois law has three elements:

(1) a false statement of material fact; (2) made with knowledge of its falsity and (3) reliance on the statement to plaintiff's detriment. *See Kapelanski v. Johnson*, 390 F.3d 525, 530-31(7th Cir. 2004); *PRM Realty Group v. Wood*, No. 02 C 3396, 2002 WL 1792063, at *2 (N.D. Ill. Aug. 5, 2002).

As Defendant points out, fraudulent misrepresentations must indeed be believed and acted upon to be actionable. *See AMPAT/Midwest, Inc. v. Illinois Tool Works, Inc.*, 896 F.2d 1035, 1041 (7th Cir. 1990). Parish has never stated that be believed the statements in the PIP at any point; in fact, he has always argued that they are false statements. *See Miles v. LaSalle Fin. Serv., Inc.*, No. 93 C 1660, 1995 WL 599053, at *2 (N.D. Ill. Oct. 5, 1995) (where an employee could not show that he relied on his performance evaluation statements to his detriment, his fraudulent misrepresentation claim failed). Plaintiff has not suggested that he "relied" on Defendant's alleged false statements or took any action in such reliance. The evidence does not support a fraudulent misrepresentation theory.

## **CONCLUSION**

Defendant has presented a number of factual and legal arguments in support of its motion for summary judgment. Plaintiff makes little effort to challenge those arguments. Instead, he describes in detail his objections to and criticisms of Motorola's management practices. Thus, he contends that the managers involved in evaluating him "had little practical knowledge of work done by the Plaintiff, were not actively working with the Plaintiff," based their assessments "on biased personal feelings . . . or did not give feedback about the Plaintiff." (Plaintiff's Memorandum of Law for Denial of Defendant's Motion for Summary Judgment, at 2.) He contends that the information reflected in his evaluation was incorrect and incomplete. (*Id.* at 2, 7.) Further, he contends that Motorola violated its "Open Door" policy when managers declined to make any changes in his performance evaluation for 2002. (Plaintiff's 56.1 Add'l ¶ 3.) The court notes that Pavel Pesek did meet regularly with Plaintiff during the Performance Improvement Plan and made a written record

9

that Plaintiff's performance did improve. And it is undisputed that Plaintiff resigned of his own choice. In any event, regardless whether Defendant's procedures were fair or thoughtful, Plaintiff has not created any disputes of fact concerning the merits of his tort claims. Defendant's motion for summary judgment (63) is granted.

ENTER:

Dated: March 29, 2007

REBECCA R. PALLMEYER
United States District Judge